IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | No. 4:18-CR-230-O |
| DENISE CROS-TOURE (01)<br>MOHAMED TOURE (02) | |

## GOVERNMENT'S RESPONSE TO DEFENDANTS' JOINT MOTION IN LIMINE

The United States of America, by and through undersigned counsel, respectfully moves this Court to deny Defendants' Joint Motion In Limine. The defendants argue that the Government should be prohibited from "making any mention through interrogation, voir dire examination, opening statement, argument or otherwise, either directly or indirectly" of multiple terms and topics the defendants claim to be irrelevant or unduly prejudicial. Defs.' Joint Mot. In Lim., Dkt. 35. For the reasons set forth below, the defendants' arguments are either without merit or concern issues the Government does not anticipate arising at trial.

### BACKGROUND

On September 19, 2018, a grand jury indicted the defendants, charging them with conspiracy to commit forced labor in violation of 18 U.S.C. § 1594(b); forced labor in violation of 18 U.S.C. § 1589; conspiracy to commit alien harboring in violation of 8 U.S.C. § 1324(a)(1)(A)(v)(I); and alien harboring in violation of 8 U.S.C. § 1324(a)(1)(iii). The grand jury additionally charged defendant Mohamed Toure with making false statements in violation of 18 U.S.C. § 1001.

The charges arise from the defendants' scheme, plan, and pattern to harbor and compel the labor of D.D., beginning when she was a minor. At trial, the Government will establish that in January 2000, defendant Mohamed Toure picked up D.D. at the Dallas/Fort Worth International Airport and transported her to the defendants' residence in Southlake, Texas. D.D. had traveled alone to Texas from Guinea, Africa. Just prior to coming to the United States, D.D. resided in the home of defendant Denise Cros-Toure's parents in Conakry, Guinea, where she performed housekeeping tasks such as cooking and cleaning.

Following D.D.'s arrival in 2000 and continuing through her escape in 2016, the defendants required her to work extensive hours providing childcare and performing other domestic services for the defendants in their Southlake home. The defendants did not pay D.D. for her services, nor did they enroll her in school, or ever bring her to a doctor or similar medical professional. Further, the defendants physically, verbally, and emotionally abused D.D., socially isolated her, and restricted her contact with her family in Guinea.

**ARGUMENT**

I. **The Defendants' Socioeconomic Status and Political Affiliation are Relevant to the Forced Labor Counts Charged in the Indictment**

The defendants argue that the Government should be prohibited from referring or alluding to the defendants' socioeconomic statuses or political affiliations. *See* Defs.' Joint Mot. In Lim., Dkt. 35 at 1-2. The Government anticipates introducing relevant evidence that the defendants were of a higher socioeconomic statutes than that of D.D.

The defendants' socioeconomic status was greatly influenced by the political affiliation of defendant Toure's father, the late Ahmed Sekou Toure, the former President of Guinea, who served in that position for 26 years. This evidence is relevant to the jury's determination of whether D.D. felt compelled to work for the defendants because she feared serious harm.

Section 1589 requires the Government to prove that the defendants obtained D.D.'s labor or services by a prohibited means, including "a scheme, plan, or pattern intended to cause [D.D.] to believe that, if [she] did not perform such labor or services, [she] would suffer serious harm." 18 U.S.C. § 1589. Inequalities between forced labor victims and defendants, including their relative socioeconomic statuses, should be considered in determining whether a victim felt compelled to labor for fear of serious harm. For example, in *United States v. Bradley*, 390 F.3d 145, 152-53 (1st Cir. 2004), *vacated on other grounds*, 545 U.S. 1101 (2005), the court upheld jury instructions in a forced labor prosecution that allowed the jury to consider the "special vulnerabilities" of the victim in determining this element of the crime.

Specifically, the court instructed that the jury may consider the victim's "background, physical and mental condition, experience, education, *socioeconomic status*, and any inequalities between [the victims] and the defendants with respect to these considerations, including their relative stations in life." *Bradley*, 390 F.3d at 153 (emphasis added). Courts in the Northern District of Texas, including this one, have provided the very same jury instructions in the forced labor prosecutions of *United States v. Murra* and *United States v. Nnaji*. *See* Jury Instructions at 11, *United States v. Murra*,

No. 4:16-CR-078-O-1 (N.D. Tex. Aug. 5, 2016) (Dkt. No. 173); Jury Instructions at 13, *United States v. Nnaji*, No.4:09-CR-172-A (N.D. Tex. Feb. 2, 2010) (Dkt No. 84).

The power dynamic between the defendants (a politically powerful and wealthy family in Guinea) and D.D. (a poor girl from rural Guinea) is a critical component to understanding D.D.'s special vulnerabilities and the surrounding circumstances under which the defendants compelled her labor. Because the evidence of the defendants' socioeconomic status and political affiliation are relevant to the jury's determination of whether D.D. felt compelled to labor for fear of serious harm, this Court should deny the defendants' first request in Defendants' Joint Motion In Limine. Dkt. 35 at 1-2.

## II.   "Human Trafficking" Is Synonymous with Forced Labor, and "Slavery" Is Not an Unfairly Prejudicial Term in the Context of This Case

The defendants argue that the Government should be prohibited from referencing or alluding to "slavery, the illegal slave trade, or the practice of human trafficking." Defs.' Joint Mot. In Lim., Dkt. 35 at 2. Preliminarily, the Government does not anticipate any circumstances under which it would reference "the illegal slave trade" in this case, given the ordinary understanding of that term to be referencing the transatlantic slave trade that existed from the 16th to 19th centuries. Similarly, the Government does not anticipate discussing the term "slavery" in the context of that term's historical significance in the United States. Should such circumstances arise, the Government is not opposed to addressing the matter with this Court outside of the presence of the jury as requested by the defendants.

With respect to "human trafficking" and "modern day slavery," however, those terms are relevant and not unduly prejudicial. The defendants argue that because they are not charged with smuggling illegal aliens across the U.S. boarder, the term "human trafficking" is not relevant to this case. Defs.' Joint Mot. In Lim., Dkt. 35 at 2-3. This argument, however, conflates the term "human trafficking" with "human smuggling." Human smuggling involves illegally moving people across international borders. *See* John Cotton Richmond, *Human Trafficking: Understanding the Law and Deconstructing Myths*, 60 St. Louis U. L.J. 1, 21-22 (2015). Human trafficking, in contrast, is synonymous with forced labor, and does not relate to the illegal movement of persons across the U.S. border. *Id.*

The defendants are charged with forced labor under 18 U.S.C. § 1589, which was enacted as part of the Trafficking Victims Protection Act (TVPA) of 2000. *See* Pub. L. No. 106–386, Div. A., 114 Stat 1464 (2000). Following the Supreme Court's decision in *United States v. Kozminski*, 487 U.S. 931 (1988), Congress acknowledged that forced labor is a form of "modern day slavery." Specifically, Congress intended for Section 1589 "to address the increasingly subtle methods of *traffickers* who place their victims in *modern-day slavery*, such as where *traffickers* threaten harm to third persons, restrain their victims without physical violence or injury, or threaten dire consequences by means other than overt violence . . ." and "to combat severe forms of worker exploitation that do not rise to the level of involuntary servitude as defined in *Kozminski*." H.R. Conf. Rep. No. 106-939, at 101 (2000) (emphasis added).

Because human trafficking is a form of modern day slavery, these terms are appropriately descriptive without being unduly prejudicial. *See United States v. Sabhnani*, 599 F.3d 215, 232 (2d Cir. 2010) (prosecutor's statement that the forced labor prosecution "was a case of modern day slavery" was proper in the context of bail hearing). The Government should be given the leeway to fairly describe the evidence introduced during trial. *See Whittington v. Estelle*, 704 F.2d 1418, 1423 (5th Cir. 1983). If the evidence warrants the use of these terms, "[c]ounsel must properly have some latitude so long as prejudice does not appear." *Id.* (quoting *Schwartz v. Northwest Airlines, Inc.*, 275 F.2d 846 (2d Cir.1960). *See also United States v. Tomblin*, 46 F.3d 1369, 1390 (5th Cir. 1995); *United States v. Gordon*, 876 F.2d 1121, 1127 (5th Cir. 1989).

Because the terms "human trafficking" and "modern day slavery" are relevant and not unduly prejudicial when used in the context of the forced labor crimes for which the defendants are charged, this Court should deny the second request in Defendants' Joint Motion In Limine. Dkt. 35 at 2-3.

### III.  The Defendants' Failure to Enroll the Victim in School Is Relevant Evidence

The defendants argue that the Government should be prohibited from referring or alluding to D.D.'s non-enrollment in public or private educational institutions. *See* Defs.' Joint Mot. In Lim., Dkt. 35 at 3. The defendants' failure to enroll the victim in school, however, is relevant to several of the crimes charged in the Indictment.

First, the defendants' failure to enroll the victim in school is relevant to the jury's determination that the defendants obtained the victim's labor or services. Section 1589

Government's Response to Joint Motion in Limine – Page 6

requires the Government to prove that the defendants "provide[d] or obtain[ed]" D.D.'s labor using any of the prohibitive means. 18 U.S.C. § 1589. The fact that D.D., a school-age minor victim during much of the time period covered by the Indictment, did not attend school supports the Government's allegation that she worked full time in the defendants' home. The Government anticipates that the defendants will deny the allegation that D.D. worked in their home, and instead argue that the defendants were raising D.D. as if she were their own biological child. The fact that the defendants did not enroll D.D. in school, when they did enroll each of their five biological children in school, contradicts this claim and is thus relevant to the crimes charged.

Second, the fact that the defendants never enrolled D.D. in a public or private educational institution is relevant to the Government's allegations that the defendants used a coercive scheme to compel D.D.'s labor. As noted above, inequalities between the defendants and D.D., to include education, are relevant to the jury's determination of whether the victim felt compelled to work for fear of serious harm. *See Bradley*, 390 F.3d at 152-53 (finding that it is relevant in a forced labor case to consider the victim's "background, physical and mental condition, experience, *education*, socioeconomic status, and any inequalities between [the victims] and the defendants") (emphasis added).

Part of the defendants' coercive "scheme, plan, or pattern" to compel D.D.'s labor or services in violation of 18 U.S.C. § 1589, was to maintain her isolated and uneducated existence within the defendants' home. Depriving D.D. of a formal education, the opportunities that result from education, and the social contacts she otherwise would have made with her teachers and peers, worked together to make D.D. believe that she had no

other option but to continue to labor for the defendants. *See United States v. Nnaji*, 447 F. App'x 558, 560 (5th Cir. 2011) (finding that defendants' efforts to socially isolate the victim "was further evidence that the couple coerced the victim into working for them"); *United States v. Djoumessi*, 538 F.3d 547, 552-53 (6th Cir. 2008) (discussing "special vulnerabilities" to include age, status as an illegal alien, and lack of contact with anyone other than the defendant).

Finally, the fact that the defendants kept D.D. from attending school is also relevant to prove that the defendants substantially facilitated her illegal presence in the United States in violation of 8 U.S.C. § 1324. The Fifth Circuit has defined "substantially facilitate" to mean any conduct that makes "an alien's illegal presence in the United States substantially 'easier or less difficult.'" *United States v. Shum*, 496 F.3d 390, 392 (5th Cir. 2007) (quoting *United States v. Dixon*, 132 F.3d 192, 200 (5th Cir. 1997)). The defendants' failure to enroll D.D. in school facilitated her being able to remain illegally in the United States undetected by school administrators, educators, parents, and peers. Further, evidence of social isolation is relevant to the jury's determination of whether the defendants substantially facilitated D.D.'s illegal presence. *See Nnaji*, 447 F. App'x at 560 (finding that evidence the defendants socially isolated the victim supported the guilty verdict for illegal alien harboring); *see also United States v. Dann*, 652 F.3d 1160, 1174-75 (9th Cir. 2011) (finding that the defendant forbidding the victim from speaking to anyone outside the home was sufficient evidence that the defendant was shielding the victim from detection).

For the reasons set forth above, this Court should deny the third issue raised in Defendant's Joint Motion In Limine.  Dkt. 35 at 3.

## IV.   Sexual Assault Allegations

The defendants argue that the Government should be prohibited from referring or alluding to alleged bad acts committed by other family members.  *See* Defs.' Joint Mot. In Lim., Dkt. 35 at 3-5.  The Government does not anticipate any circumstances under which it would reference the alleged sexual assault of D.D. by defendant Denise Cros-Toure's uncle.  Similarly, the Government does not anticipate referencing the alleged sexual assault of an unknown minor victim by defendant Denise Cros-Toure's father.  Should such circumstances arise, the Government is not opposed to addressing the matter with this Court outside of the presence of the jury as requested by the defendants.  Dkt. 35 at 3-5.

## V.   The Defendants' Failure to Provide the Victim with Medical Care Is Relevant

The defendants argue that the Government should be prohibited from referring or alluding to the fact that the defendants did not provide D.D. with access to adequate medical care.  *See* Defs.' Joint Mot. In Lim., Dkt. 35 at 5.  Evidence that shows the defendants failed to provide D.D. with access to adequate medical care, however, is relevant to several of the crimes charged in the Indictment.

Similar to the arguments set forth in Section III regarding the defendants' failure to enroll D.D. in school, any evidence that the defendants failed to provide D.D. adequate medical care during her over 15 years with the family is also relevant to the Government's allegations that the defendants used a coercive scheme to compel D.D.'s

**Government's Response to Joint Motion in Limine – Page 9**

labor. *See Bradley*, 390 F.3d at 152-53 (finding evidence that defendants kept some victims isolated from medical care was relevant to the coercive forced labor scheme used with other victims); *United States v. Alzanki*, 54 F.3d 994, 1004 (1st Cir. 1995) (finding that depriving the forced labor victim of medical care made her more susceptible to the threats and coercion).

Likewise, this evidence is also relevant to the Government's allegations that the defendants were attempting to conceal D.D. from authorities. In the same way that the defendants failed to enroll her in school, *see* Section III *supra*, failing to provide D.D. access to medical care further isolated her and substantially facilitated her illegal presence in violation of 8 U.S.C. § 1324.

For these reasons, this Court should deny the fifth issue raised in Defendant's Joint Motion In Limine. Dk. 35 at 5.

## VI. Future or Long-Term Psychological Effects of Alien Harboring or Forced Labor Regarding the Victim's Mental State

The defendants argue that the Government should be prohibited from referring or alluding to the future or long-term psychological effects of alien harboring or forced labor, or how harboring or forced labor generally affects an individual's mental state *See* Defs.' Joint Mot. In Lim., Dkt. 35 at 6. The Government does not anticipate introducing evidence of any *future* or *long term* psychological effects of the defendants' crimes on the victim. The Government does anticipate, however, introducing evidence relevant to

D.D.'s state of mind during the time period the defendants compelled her labor. The victim's state of mind is relevant to the jury's determination of whether she felt compelled to labor for fear of serious harm.

For these reasons, this Court should deny the sixth issue raised in the Defendant's Joint Motion In Limine. Dkt. 35 at 6.

## CONCLUSION

For the foregoing reasons, the Government respectfully requests that the Court deny, in part, the requests in Defendants' Joint Motion In Limine.

Respectfully submitted,

*/s/ Rebekah J. Bailey*
REBEKAH J. BAILEY
Trial Attorney
U.S. Department of Justice, Civil Rights Division
950 Pennsylvania Ave., N.W.
Washington, D.C. 20530
State Bar of Texas, Bar Card No. 24079833

*/s/ William E. Nolan*
WILLIAM E. NOLAN
Trial Attorney
U.S. Department of Justice, Civil Rights Division
950 Pennsylvania Ave., N.W.
Washington, D.C. 20530
State Bar of Maryland, Bar Card No. 0012130143

## CERTIFICATE OF SERVICE

I hereby certify that on November 21, 2018, I electronically filed the foregoing document with the clerk for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. The electronic case filing system sent a ANotice of Electronic Filing@ to the following attorney of record who has consented in writing to accept this Notice as service of this document by electronic means: Scott Palmer and Brady Wyatt, counsel for the defendants.

                              */s/ Rebekah J. Bailey*
                              REBEKAH J. BAILEY
                              Trial Attorney